O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dung Duc Luu,<br><br>Petitioner,<br>v.<br>Mark Bowen, et al.,<br><br>Respondents. | Case No.: 5:25-CV-03145-MEMF-SP<br><br>**ORDER GRANTING IN PART PETITIONER'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 8]** |

Before the Court is the Application for a Temporary Restraining Order and Preliminary Injunction filed by Petitioner Dung Duc Luu. Dkt. No. 8. For the reasons stated herein, the Application is GRANTED IN PART.

//

//

1

### I. Background

#### A. Factual Background[1]

In 1986, Dung Duc Luu came to the United States at age 14, unaccompanied by parents. Petition at 3. In 1991, Luu was convicted of robbery and burglary, and the court issued a final order of removal on September 16, 2009. *Id.* At the time, Vietnamese immigrants pre-1995 were not being deported back to Vietnam. *Id.* at 4-6. The convictions underlying Luu's order of removal were vacated on December 3, 2025. *Id.*at 1; Ex. 1, Dkt. No. 14-1.

Luu spent three months in ICE detention for his 2009 convictions. *Id.* at 3. After that, Luu was released on an Order of Supervision, on which he remained for the next nineteen years. *Id.* at 3-4, 14. Luu has been employed at A+ Printing and Labels in Santa Ana, California since 1998. *Id.* at 4.

In compliance with his supervision requirements, Luu has regularly checked in as required at ICE offices since 2009. *Id.* at 4. On August 29, 2025, Luu reported to his required weekly check-in at the ICE office. *Id.* Upon his arrival, he was informed that ICE would be taking him into custody effective immediately. *Id.*

Luu's Notice of Revocation of Release states that:

> This letter is to inform you that your case has been reviewed, and it has been determined that you will be kept in custody of the U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your immigration and criminal history, and a change in circumstance which allows ICE to seek to remove you. Based on the above, and pursuant to 8 CFR 241.4, you are to remain in ICE custody at this time.

Ex. 2, Dkt. No. 14-2. ICE did not give him prior notice, cite new circumstances that justified his redetention, or provide new information that suggested that his removal to Vietnam was now more likely or imminent. Petition at 4, 18. Luu has not been formally ordered removed to any country other than Vietnam. *Id.* at 18. After about a month in detention, Luu was given a notice of failure to depart, notifying him that he had to surrender certain documents, including a passport, and cooperate with removal efforts. *Id.* at 14 n.8. He does not have a passport to surrender, and the government

---

[1] Unless otherwise indicated, the following factual background is derived from the Amended Petition for a Writ of Habeas Corpus. Dkt. No. 7 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

2

identification that he does have, his state driver's license, is with his property in Adelanto and accessible by immigration officials. *Id.*

On December 3, 2025, Luu had a short interview with an individual who he understood to be a representative from the Vietnamese consulate. *Id.* Luu alleges that the individual did not suggest that Vietnam would be willing to accept him, much less that travel documents would be provided in the reasonably foreseeable future. *Id.* at 14-15.

### B. Procedural History

On November 21, 2025, *pro se* Petitioner Dung Duc Luu filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 against the Government. *See generally* Dkt. No. 1. On the same day, Petitioner filed a Motion for Temporary Restraining Order. *See generally* Dkt. No. 3. On November 24, 2025, the Court issued a Minute Order dismissing Petitioner's Temporary Restraining Order without prejudice for procedural defects. *See* Dkt. No. 6.

On December 4, 2025, Petitioner filed an amended petition for writ of habeas corpus, Dkt. No. 7 ("Petition"), and Application for a Temporary Restraining Order and Preliminary Injunction, Dkt. No. 8 ("Application"). On that same day, a Request for Appointment of Counsel was filed by Petitioner. Dkt. No. 9. On December 7, the Government filed its opposition. Dkt. No. 11 ("Opp."). On December 8, the Government filed a Declaration of Jorge G. Preciado in support of its Opposition. Dkt. No. 12. On that same day, Petitioner filed his Reply. Dkt. No. 14 ("Reply"). On December 10, 2025, Plaintiff filed a Declaration of Estalyn Marquis in Support of Application for Preliminary Injunction. Dkt. No. 15.

## II. Applicable Law

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2)

a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.'" *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700-01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must

4

Case 5:25-cv-03145-MEMF-SP   Document 16   Filed 12/11/25   Page 5 of 16   Page ID #:202

be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Government to rebut that showing.

A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### III. Discussion

#### A. Luu's Motion is procedurally proper.

As a threshold matter, the Government argues that Luu's motion is procedurally improper. Opp. at 5-7. It cites Local Rule 7-5, which requires a moving paper to include a "complete memorandum . . . and the points and authorities upon which the moving party will rely," and "[t]he evidence upon which the moving party will rely in support of the motion." C.D. Cal. L.R. 7-5. It also cites Local Rule 65-1, which requires that a "party seeking a temporary restraining order must submit . . . a declaration setting forth the facts and certification required by F.R.Civ.P. 65(b)(1)(A) and (B)." C.D. Cal. L.R. 65-1. And Local Rule 7-19, which requires an "application for an ex parte order [to] be accompanied by a memorandum containing . . . the reasons for the seeking of an ex parte order, and points and authorities in support thereof." C.D. Cal. L.R. 7-19.

Respondents contend that the TRO Application is not "complete" and does not include "points" in support of relief, legal analysis related to the facts, or a "declaration" of its factual contentions. *See* Opp. at 5-7 (citing *Hung Huu Anh Hoang v. Kristi Noem et al.*, 5:25-cv-03177

5

(C.D. Cal. Dec. 4, 2025)). Luu contends that the TRO is filed as an application, not a motion, so Local Rule 7-5 is inapplicable, and the application is not an ex parte application, where Respondents were notified in advance and had time to oppose. *See* Reply at 9-10. Luu also contends that the Application contains sufficient evidence because of the verified petition and documentary evidence. *See id.* at 10.

"A preliminary injunction [or TRO] is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "A district court may . . . consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc)).

Here, although the TRO Application is brief, it does argue the factual and legal basis for the requested relief because it specifically references the claims set forth in Luu's Petition, and the Petition argues why Luu is likely to succeed on the merits for all his claims. *See* Application at 2-3; *see generally* Petition. Luu also subsequently included documentary evidence to support his claims. *See* Exs. 1, 2, Dkt. Nos. 14-1, 14-2; *see* Reply at 10. And Luu's counsel did include a declaration setting forth the factual contentions that cross reference the Petition and explain the notice requirement under Federal Rule of Civil Procedure Rule 65(b)(1). *See* Dkt. No. 8-1 ¶¶ 2-4. Therefore, this is a proper TRO Application.

The Government next argues that to the extent Luu is relying on the factual allegations in the Petition for its TRO Application, the Petition itself is not properly verified because there is no personal knowledge, which does not create "sworn testimony as to their truth." *See* Opp. at 6. The Government cites to an unpublished, nonbinding decision in *Hung Huu Anh Hoang v. Kristi Noem et al.*, 5:25-cv03177, *4 (C.D. Cal. Dec. 4, 2025), where the court held that the "[t]o the extent Hoang relies on the factual allegations of his Petition, those allegations are not verified by Hoang. Rather, Hoang's attorney, who does not claim to have personal knowledge of the facts in the Petition, has provided the verification." *Id.*

/ / /

/ / /

Local Rule 83-16.2 states that:

> If the petition or motion is verified by a person other than the individual in custody, the person verifying the document shall set forth the reason why it has not been verified by the person in custody. The person verifying the document shall allege only facts personally known to that person. If facts are alleged upon information and belief, the source of the information and belief shall be stated.

C.D. Cal. L.R. 83-16.2. Here, the Court finds that the Petition is properly verified. Luu's counsel swore "under penalty of perjury … that [based on the information and belief,] the contents of this petition are true and correct to the best of [her] knowledge." *See* Petition at 24. Luu was a pro se plaintiff, where his initial TRO and Petition were dismissed without prejudice because Luu did not follow the proper procedures. *See* Dkt. No. 6. Luu then requested counsel under the Criminal Justice Act, which the Court granted. *See* Dkt. No. 9. Luu's counsel verifying the Petition, Estalyn Marquis, has spoken with Luu, *see* Reply at 3, where she got the information for the Petition and thus has personal knowledge. And the assertions in the Petition can be taken as true because Luu's counsel swore that based on what she has learned from the information, the Petition is true. Therefore, there is "competent sworn testimony" to satisfy the verification requirements under Local Rule 83-16.2

Accordingly, the Court does not find procedural defects with the TRO Application that warrant denial on that basis and will next turn to the merits of the Application.

### B. Applying the *Winter* factors, Luu is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Luu is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

The Petition advances four grounds upon which a temporary restraining order should be granted: First, Luu argues that there is no significant likelihood of his removal to Vietnam in the reasonably foreseeable future. Petition at 11-14. Second, he argues that Respondents have violated due process and INA regulations by re-detaining him without notice and an opportunity to be heard.

*Id.* at 15-18. Third, he argues that his removal to any third country would violate due process because ICE has given him neither notice of the proposed third country nor an opportunity to request deferral or withholding of removal. *Id.* at 18-19. Fourth, he argues that removal to third countries where Luu might face imprisonment violates the constitutional prohibition on "punitive" removal practices. *Id.* at 20-21.

The final two grounds—challenging third country removal as a due process violation and an impermissibly punitive removal measure—concern the question of whether Luu's removal to any *third country* would be proper. *See* Petition at 19, 21. It is well settled that "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see also* Opposition at 5 n.1. Luu's Reply does not address Respondents' speculative argument, and only contends that Luu is likely to succeed on his third claim because Luu "has identified recent instances of Vietnamese nationals being removed to third countries as well as written policies that allow individuals to be deported to third countries with insufficient due process." *See* Reply at 8. But on the current record, the possibility of removal to a third country is speculative, and therefore Luu cannot show the requisite likelihood of irreparable harm (the second *Winter* factor). Thus, Luu is not entitled to a temporary restraining order on either of these two grounds. The Court will proceed to consider the other two grounds advanced.

Those remaining two grounds are as follows: (1) Luu's continued detention is unlawful because there is no significant likelihood of his removal to Vietnam in the reasonably foreseeable future, and (2) Luu's continued detention is unlawful because Respondents redetained him without notice or an opportunity to be heard. The Court addresses these grounds below.

/ / /

/ / /

/ / /

/ / /

/ / /

i. <u>The first *Winter* factor, likelihood of success on the merits, is met with respect to both grounds.</u>

    1. *Luu has demonstrated a likelihood of success on the merits of his claim that his detention is unlawful because there is no significant likelihood of his removal to Vietnam in the reasonably foreseeable future.*

The parties dispute how to apply the *Zadvydas* framework to Luu's continued detention: Luu argues that the Court should consider his prior period of detention and find that he is therefore beyond *Zadvydas*'s presumptive six-month period. *See* Petition at 12 (citing *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001)). Respondents, on the other hand, argues that the *Zadvydas* clock restarted on Luu's latest detention. Opposition at 8-9. The parties do not cite to any binding authority, and this Court is not aware of any, that addresses how to apply the *Zadvydas* framework to a redetention.

The Court finds that to apply the *Zadvydas* framework in the way Respondents propose under these facts would be contrary to the reasoning of *Zadvydas* and produce anomalous results. The question in *Zadvydas* concerned the constitutionality of indefinite or prolonged detention. 533 U.S. at 689 ("In our view, the statute, read in light of the Constitution's demands, limits a [non-citizen's] post-removal-period detention to a period reasonably necessary to bring about that [non-citizen's] removal from the United States. It does not permit indefinite detention."). The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods. To apply *Zadvydas* in the manner Respondents propose would suggest that Respondents could detain an individual for six months, release them, redetain them just outside the gates of the detention facility, and redetain them for another six months, and do this repeatedly without ever having to comply with its burden under *Zadvydas*. Another district court in this Circuit's approach is instructive here: It considered and rejected the Government's argument that "because [the petitioner's] detention was not consecutive, the clock has restarted." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (collecting similar cases). Rather, it appears that Section 241.13 actually codifies how *Zadvydas* should apply:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided <u>good reason to believe</u> there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future.*

8 U.S.C. § 241.13(a) (emphasis added).[2] This therefore indicates that the subsection Luu relies upon—241.13(i)(2)—only applies where the noncitizen has made the showing of "good reason to believe." And this mirrors *Zadvydas*: "[a]fter [the] 6-month period, once the [non-citizen] provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.[3]

    Here, Luu has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, noting the current arrangement with Vietnam, the paucity of removals to Vietnam, and the absence of any indication that the Government is seeking to meet the conditions of the current arrangement with Vietnam. *See* Petition at 14-15. The burden would therefore shift to the Government.

    Respondents argue there is a significant likelihood of removal because travel documents were requested from the Vietnamese Embassy on September 18, 2025, and Luu was then interviewed on December 1, 2025, by consular officials for the purpose of obtaining his travel documents. *See* Opp. at 9 (citing Preciado Decl. ¶¶ 20-22, Dkt. No. 12). Respondents also argue that

---

[2] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

[3] The Government contends that although "Petitioner does not yet have a specific date of anticipated removal," it does "not make his detention indefinite. *See* Opposition at 12 (citing *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008)). But unlike the plaintiff in Diouf, who was refusing to cooperate with removal after ICE "successfully completed the arrangements for Diouf's removal," Luu is not refusing to cooperate and the Government has not successfully completed the arrangements for removal as discussed below.

three individuals were removed to Vietnam in the past year, Opp. at 10, and that there is no bar to removal to Vietnam, Opp. at 10-11, 11 n.2.

However, Petitioner has gone over two and a half months without a travel document, after the request was made, and Respondents have stated that the "estimated time for production of a travel document varies and currently *remains pending*." *See* Preciado Decl. ¶ 21 (emphasis added). And in Luu's "short interview [on December 1, 2025,] with an individual who he understood to be a representative from the Vietnamese consulate," the individual "did not suggest that Vietnam would be willing to accept [him], much less that travel documents would be provided in the reasonably foreseeable future." Petition at 14-15. There is "no travel document in sight." *Id.* at 1; *see also* Marquis Decl. ¶ 2, Dkt. No. 15 (noting that the representative from the Vietnamese consulate "did not indicate that [Luu] would be receiving travel documents" after his approximately five-minute meeting). There is thus no current estimate as to when a travel document will be issued, even though the 2020 Memorandum of Understanding between the U.S. and Vietnam provides that within thirty days of a request for travel documents, the travel document should be issued, or the individual should be notified that it is insufficient. *See* 2020 Memorandum of Understanding between the Department of Homeland Security of the United States of America and the Ministry of Public Security of the Socialist Republic of Vietnam §§ 8(3), (4) (November 21, 2020), https://www.asianlawcaucus.org/news-resources/guides-reports/trinh-reports.

Furthermore, Respondents' reliance on three instances of an individual being removed to Vietnam is not persuasive to show that Luu himself faces a "significant likelihood of removal in the reasonably foreseeable future." *See* Opposition at 10. In sum, there is no "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701; *see also* Reply at 2-3.[4]

---

[4] Even if the Government can establish that Luu is removable under the 2020 MOU, Vietnam has total discretion whether to accept particular non-citizens so the 2020 MOU is insufficient on its own to show a significant likelihood of removal. *See Nguyen v. Hyde,* 788 F. Supp. 3d 144, 151 (D. Mass. 2025); *Hoac v. Becerra*, No. 25-CV-01740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Vu v. Noem*, No. 25-CV-01366, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025).

Accordingly, the Court finds that Luu is likely to succeed in showing that the Government has not rebutted his showing, so Luu has demonstrated the likelihood of success on the merits of the question of whether his detention is unlawful under *Zadvydas*.

> 2. *Luu has demonstrated a likelihood of success on the merits of his claim that his detention is unlawful because the Government did not provide him with notice and an opportunity to be heard.*

This Court next turns to Luu's second ground. Luu argues that "[b]ecause Respondents violated [his] due process rights and their own regulations, this claim provides a separate and independent basis for his release." Petition at 15. For the reasons below, this Court finds he is likely to succeed on the merits of this claim.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Importantly, the Respondents do not meaningfully dispute that Luu has the right to notice and the opportunity to be heard on his redetention, consistent with the applicable regulations.

Respondents argue that Luu was provided the proper procedures as he was "issued a Notice of Revocation of Release upon his detention" on August 29, 2025. Opp. at 12 (citing Preciado Decl. ¶ 10). But the Notice of Revocation contains generic language, where Luu's Notice cites to 8 C.F.R. § 241.4 for the basis of removal and states that "[t]his decision has been made based on a review of your immigration and criminal history, and a change in circumstances which allows ICE to seek to remove you." *See* Ex. 2, Dkt. No. 14-2. There is no reference to any violation of the Order of Supervised Release, what the change in circumstance is, or any other specific reason as to why Luu was redetained. *See id.* This vague, generic statement does not satisfy due process and the requirements of 8 C.F.R. § 241.13(i)(3). *See Trump*, 604 U.S. at 673 (quoting *Mullane*, 339 U.S. at 314); 8 C.F.R. § 241.13(i)(3) (noting that upon revocation, the noncitizen "will be notified of the reasons for revocation"); *see also Bui v. Warden of the Otay Mesa Det. Facility*, No. 25-cv-2111, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025); *Esmail v. Noem*, No. 25-cv-08325, 2025 WL

1  3030590, at *5 (C.D. Cal. Sept. 12, 2025). Therefore, the Court finds that Luu was not given proper
2  notice prior to the revocation. *See* Petition at 18.

3       Furthermore, Respondents focus on the fact that the decision to revoke supervised released
4  and re-detain Luu is discretionary. Opp. at 12-13 (citing *Rodriguez v. Hayes*, 578 F.3d 1032 (9th Cir.
5  2009)). Be that as it may, this does not mean that Luu does not have the right to notice and the
6  opportunity to be heard on this discretionary decision. And perhaps more importantly, the
7  Government fails to justify why it should be permitted to exercise its discretion under the regulation
8  in a way to contravenes the requirement of the same regulation to provide notice and an opportunity
9  to be heard. In light of *J.G.G.*, it appears that the applicable regulations, namely 8 U.S.C. §
10 241.13(i)(3) and 8 U.S.C. § 241.4(*l*)(1) are the means by which ICE has determined it will meet the
11 due process rights of putative detainees. The Government provides no reason the Court should find
12 otherwise, and the Court declines to take the extraordinary position that these individuals are not
13 entitled to notice and an opportunity to be heard in the absence of clear direction—in binding law, in
14 the relevant statutes, or in the applicable regulations—to that effect. The Court therefore finds that
15 Luu is likely to succeed on the merits of his claim that detention is only permitted upon notice and
16 an opportunity to be heard. Because the Government never provided Luu with notice that his Order
17 of Supervision was revoked prior to re-detention, never conducted an informal interview or afforded
18 Luu an opportunity to be heard, and never sufficiently demonstrated the changed circumstances that
19 render his removal significantly likely in the reasonably foreseeable future, Luu is thus likely to
20 succeed on the merits of hid due process claim. *See* Petition at 18; Reply at 6-7.

21       The Court's conclusion is consistent with that of other district courts. Particularly instructive
22 is the Court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facil.*, No. 25-CV-02488,
23 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the Court found that a detention which did not
24 properly notify the petitioner of the reasons for revocation of release, or grant him an interview to
25 allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at
26 *5–7. In *McSweeney*, it appears that the petitioner had received more notice than Luu has in this
27 case; there, the petitioner was sent a notice of the reasons for revocation of his release. *Id.* at *6.
28 Still, because there was no interview opportunity following that notice, the Court found that the

procedural deficiencies rose to the level of procedural due process violations. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

Today, the Court must determine whether Luu is likely to eventually prevail on the merits. For the reasons described above, and because the Government never provided Luu with notice that his Order of Supervision was revoked prior to re-detention, never conducted an informal interview or afforded Luu an opportunity to be heard, or never sufficiently demonstrated the changed circumstances that render his removal significantly likely in the reasonably foreseeable future, the Court finds that he is. *See* Petition at 18. In sum, the first *Winter* factor is met here under both of Luu's first two requests for habeas relief.[5]

>  ii.   The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Luu must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. The Court finds that he has done so.

Here, Luu has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Luu argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Luu's ongoing detention of indeterminate length—which may lead to a deportation sometime in the future to an undetermined country—inherently risks him irreparable harm, as it is not clear when he will be

---

[5] Luu contends that he "plans to immediately move to re-open his immigration proceedings and to move to vacate the removal order." Petition at 2. Respondents argue that the Court cannot enjoin the Government from removing Luu while Luu challenges a removal order by filing a motion to reopen. *See* Opp. at 14 (citing *Rauda v. Jennings*, 55 F.4th 773, 775 (9th Cir. 2022)). However, Luu's challenge is not to the "Attorney General's exercise of his discretion to execute [Luu's] removal order, which [the Court has] no jurisdiction to review," *see Rauda*, 55 F.4th at 778, but rather Luu is seeking to enjoin his removal only until the due process and statutory procedural requirements are followed, *see* Petition at 22-23; Reply at 5 n.2. Thus, the Court has jurisdiction.

processed, released, or removed. Respondents do not contest these arguments in their Opposition. *See generally* Opp. Respondents only contend that Luu has not shown an irreparable harm if he was transferred out of this District. *See* Opp. at 5 n.1. Luu has not addressed this argument and has thus conceded it. *See* Reply at 8. However, because the Court has already found that Luu has a sufficient likelihood of success on the merits of both of his challenges to his current detention—one of which has a basis in Luu's constitutional rights—the Court finds the second *Winter* factor is met.

        iii.   <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Luu's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Luu's favor. It is true, as Respondents note, that the Government has a strong interest in the enforcement of federal immigration law. *See* Opp. at 15. But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). In sum, the third and fourth *Winter* factors are met here.

### IV. **Conclusion**

For the foregoing reasons, the Court hereby ORDERS that Luu's Application for a Temporary Restraining Order and Preliminary Injunction (Dkt. No. 8) is GRANTED IN PART. Luu's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody as soon as reasonably practicable, and not redetain him without compliance with 8 U.S.C. § 241.4(*l*)(1) and 8 U.S.C. § 241.13(i);

2. Respondents shall show cause, in writing, as to why a preliminary injunction should not issue in this case no later than fourteen (14) days of the date of this Order. Petitioner may file a response no later than seven (7) days after Respondents' filing; and

3. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by December 24, 2025. The joint status report shall also address whether the habeas petition is moot.

IT IS SO ORDERED.

Dated: December 11, 2025.

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge